## UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF FLORIDA

**MICHAEL KRUMPAK**,

      Plaintiff,

vs.

**CHEWY, INC.**

      Defendant.

_____/

## COMPLAINT

COMES NOW, Plaintiff, MICHAEL KRUMPAK, through his undersigned attorney, and files this Complaint against Defendant CHEWY, INC. and states:

## JURISDICTION AND VENUE

1.      This is an action arising under Title VII, 42 U.S.C. § 2000e and the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621, *et seq*.  This Court has jurisdiction pursuant to 28 U.S.C. § 1331 as this case is brought pursuant to these federal laws.

2.      The Plaintiff MICHAEL KRUMPAK is and was a resident of Broward County, Florida at the time the dispute arose and is *sui juris*.

3.      The Defendant, CHEWY, INC., is a Foreign Profit Corporation, registered to do business in Florida, with its headquarters located in Dania Beach, Florida.

4.      Venue is proper in this Court because Plaintiff was a resident of Broward County, Florida, at the time the dispute arose, the Defendant's headquarters are in Broward County, Florida, and the events giving rise to this case occurred within Broward County, Florida.

5.      Plaintiff worked for Defendant as the Director of Learning from June of 2017 through October 26, 2019, when Defendant terminated Plaintiff's employment.

1

6.     The acts and/or omissions giving rise to this Complaint arose in Broward County, Florida.

## COUNT I. DISCRIMINATION BASED ON SEX UNDER TITLE VII OF THE CIVIL RIGHTS ACT, 42 U.S.C. §2000e

7.     Plaintiff re-alleges the factual and jurisdictional statements in paragraphs 1 through 6 as though fully set forth herein.

8.     Plaintiff is a homosexual man.

9.     In September 2017, Plaintiff's then supervisor, Stuart Horowitz, told the entire human resources leadership team that Plaintiff was a gay man who had a husband.  Plaintiff had not previously discussed his sexual orientation at work, but Horowitz decided to make an issue out of it.

10.     Immediately after this announcement, Plaintiff noticed that others at work began treating him differently, most notably Rob Lopez, who was the Vice President of Recruiting at the time, and who later became Plaintiff's supervisor.

11.     In December of 2017, at Chewy's holiday party, at Horowitz's home, when Rob Lopez saw Mr. Krumpak with his husband, Lopez immediately turned the other way and avoided speaking with Mr. Krumpak or looking at Mr. Krumpak or his husband for the entire duration of the party.

12.     After Plaintiff's supervisor, Horowitz, was terminated by Chewy, Rob Lopez became Mr. Krumpak's supervisor.

13.     Throughout Plaintiff's employment, Lopez made homophobic remarks to Plaintiff.  One example of this was on or about May 15, 2018.  At the Human Resources leadership team staff meeting, a man who was wearing his hair in a bun walked by Lopez's office, where the meeting was taking place.  Mr. Krumpak said that he liked man buns, and

2

Lopez responded in front of the entire team, "I bet you do!" while laughing at Plaintiff, as did the other members of the leadership team.  Lopez then turned to the Senior HR director and they both laughed in front of the entire human resources leadership team as they mocked Plaintiff.

14.     Lopez also created a nickname for Plaintiff, which he used in a condescending, effeminate voice and tone, while laughing because Plaintiff is gay.  He called Plaintiff "Krumpie" and encouraged others at work to do the same.  Heterosexual human resources employees were not given nick names.

15.     Lopez also expressed sexual orientation bias against Plaintiff in many other ways, such as recognizing heterosexual employees' birthdays and work anniversaries, inviting them to lunch and purchasing lunch for them, while excluding Plaintiff and failing to celebrate Plaintiff's personal and professional milestones.

16.     Lopez also cancelled many meetings that were scheduled with Plaintiff, while he did not cancel meetings with Plaintiff's heterosexual co-workers.

17.     In about June of 2019, Defendant hired another director, named Kim Logan.  Ms. Logan also reported to Lopez.  Several weeks after Logan began working at Defendant, Plaintiff was looking up something in Defendant's database, and noticed that his reporting structure had been changed so that he now reported to Logan rather than Lopez.  Lopez had never informed Plaintiff of this change.

18.     On or about July 15, 2019, Plaintiff opened up to Logan, telling her that he recently divorced his husband.  Logan responded with a look of disgust, and she canceled meetings with Plaintiff and ignored him for a week.  From that point on, Logan's demeanor toward Plaintiff significantly changed, as if she were trying to derail Plaintiff with constantly changing expectations, directions, and feedback.

19.     When Plaintiff's heterosexual co-workers had well-documented performance issues, they were offered performance conversations, job moves, additional training or coaching from outside consultants, and performance improvement plans.  However, on October 26, 2019, Lopez and Logan met with Plaintiff and abruptly terminated Plaintiff and escorted from the premises without ever offering Plaintiff an opportunity to discuss or improve his performance or even any notice that his performance was lacking.  In fact, when Logan and Lopez informed Plaintiff he was being terminated, they simply told him that Chewy was "moving in a new direction."  They also told him that his termination was not performance-related.  Finally, they had Plaintiff abruptly escorted from the premises without allowing him to collect his personal belongings or to retrieve personal documents relating to his mother's estate.  When heterosexual co-workers were terminated, even for cause, they were permitted to retrieve their personal belongings and were not abruptly escorted from the building.

20.     The only performance evaluation tool that Chewy used for its employees during Plaintiff's employment was called the 9-Box.  Plaintiff was rated as "well-placed" on that tool. His performance with Chewy was ranked very highly, and there were many heterosexual employees at the Director level at Chewy whose performance was ranked much lower than Plaintiff's, but those heterosexual Directors were not terminated.  Instead, they were given performance conversations, additional training, coaching, and opportunities to improve their performance, which Plaintiff was not provided before his termination.

21.     Throughout his employment and with regard to his termination, Plaintiff was treated worse than similarly situated heterosexual men and women with whom he worked.

22.     Because of Plaintiff's sex and his sexual orientation, he was subjected to discrimination and was eventually terminated from his employment.

4

23.     On July 14, 2020, less than 300 days after Plaintiff's termination, Plaintiff filed a Charge of Discrimination with the EEOC alleging sex discrimination by his employer.

24.     On January 14, 2021, the EEOC issued to Plaintiff a Notice of Right to Sue.

25.     Plaintiff is filing this Complaint within 90 days after receiving the Notice of Right to Sue from the EEOC.  Thus, Plaintiff has complied with all pre-suit administrative requirements.

26.     Defendant's actions were intentional, willful, harsh, oppressive, reckless, and malicious, and as a further and proximate cause, Plaintiff has suffered severe emotional distress, pain, and suffering. The wrongs done by the Defendant were aggravated by its willfulness, wantonness, and maliciousness for which the law allows the imposition of exemplary damages. Plaintiff, therefore, seeks exemplary damages in a sum to be determined by the trier of fact to serve as punishment to deter Defendant from such conduct in similar situations, as well as lost wages, benefits, and Restricted Stock Units.

27.     As a direct and proximate result of the Defendant's conduct that violated 42 U.S.C. §2000e, Plaintiff suffered damages, including lost wages, lost benefits, lost Restricted Stock Units, emotional distress, and attorneys' fees and costs.

## COUNT II.  AGE DISCRIMINATION UNDER THE AGE DISCRIMINATION IN EMPLOYMENT ACT, 29 U.S.C. §621, *et seq.*

28.     Plaintiff re-alleges the factual and jurisdictional statements in paragraphs 1 through 6 as though fully set forth herein.

29.     Plaintiff worked for Defendant from June of 2017 through October 26, 2019 as the Director of Learning.

30.     At the time of Plaintiff's termination, he was 47 years old.

31.     During the time that Plaintiff was employed by Defendant, Defendant had a pattern and practice of terminating many director and higher level employees over the age of 40. They were terminated so that younger employees could be hired.  This happened to Plaintiff, as well.

32.     In March of 2019, Plaintiff's supervisor, Stuart Horowitz, who was the Chief People Officer for Chewy, and was in his 50s was terminated.  The person who replaced Mr. Horowitz as Plaintiff's supervisor was Rob Lopez, age 38.

33.     Defendant's CEO at the time, Sumit Singh, was 37.

34.     During the time that Lopez was Plaintiff's supervisor, he repeatedly made comments about Plaintiff's gray hair and how he was getting older because his hair was getting grayer.

35.     In about June of 2019, Defendant hired Kim Logan, age 36, to a newly created position as the Head of Talent Management and Engagement.  Ms. Logan reported directly to Lopez.

36.     Logan, who was younger than 40, was essentially hired to replace Plaintiff.

37.     As a direct and proximate result of the Defendant's conduct that violated 29 U.S.C. §621, *et seq.*, Plaintiff suffered damages, including lost wages, lost benefits, lost restricted stock units, emotional distress, and attorneys' fees and costs.

## **PRAYER FOR RELIEF**

38.     WHEREFORE, Plaintiff requests lost wages, lost benefits, lost restricted stock units, compensatory damages for emotional distress and exemplary damages, and reasonable attorneys' fees from Defendants under Title VII and the ADEA and any other applicable

authority, to be proven at time of trial along with court costs, interest, and any other relief that this Court finds reasonable under the circumstances.

39. **JURY TRIAL DEMANDED**

40.     The Plaintiff demands a trial by jury.

Respectfully submitted this 13th day of April, 2021,

COANE AND ASSOCIATES, PLLC

By: */s/ Lisa Kuhlman* _____
**Lisa Kuhlman**
Florida Bar No. 978027
Email: lisa.kuhlman@coane.com
**Arthur Mandel**
Florida Bar No. 22753
Email: Arthur.mandel@coane.com
1250 E. Hallandale Beach Blvd., Suite 303
Phone: (305) 538-6800
Fax: (866) 647-8296
***ATTORNEYS FOR PLAINTIFF***

**OF COUNSEL:**

**Coane and Associates, PLLC**

**Bruce A. Coane**
bruce.coane@gmail.com
S.D. Tex. #7205
5177 Richmond Ave., Suite 770
Houston, TX 77056
Phone: (713) 850-0066
Fax: (866) 647-8296
***OF COUNSEL FOR PLAINTIFF***

7

8